82 F.3d 419
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Gladys WRIGHT, and husband Henry L. Wright; Christine
Acuff, Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 95-5175.
 United States Court of Appeals, Sixth Circuit.
 April 11, 1996.
 
 Before: JONES, BOGGS, and BATCHELDER, Circuit Judges
 PER CURIAM.
 
 
 1
 A tree fell in the Nantahala National Forest in North Carolina and severely injured Gladys Wright and Christine Acuff. Wright, her husband, and Acuff sued the United States under the Federal Tort Claims Act. The United States moved to dismiss for lack of subject matter jurisdiction. Because the motion to dismiss for lack of subject matter jurisdiction required an analysis of the merits of the case, the district court converted the motion of the United States into a motion for summary judgment and granted the motion. The plaintiffs appeal.
 
 
 2
 * Under the Federal Tort Claims Act, a federal court does not have subject matter jurisdiction over claims for damages caused by a federal policy decision. See e.g., Graves v. United States, 872 F.2d 133, 137 (6th Cir.1989) (court has no jurisdiction to hear claim that federal official should have maintained warning signs above dam). The court has no jurisdiction when (1) the official was following a government policy, or (2) the official was a policy maker and had discretion to make the challenged decision. 28 U.S.C. § 2680(a). This limit on jurisdiction is designed to shelter policy decisions from judicial review. United States v. Gaubert, 499 U.S. 315, 322-23, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991).
 
 
 3
 The core of the parties' dispute is whether a particular regulation of the National Park Service requires park rangers to cut down rotten trees such as the one that fell on the plaintiffs. The plaintiffs concede that, if the regulation does not require such trees to be cut, the choice of whether to cut a tree, or even whether to go out and look for trees to cut, would be a policy decision under § 2860(a). If the act is a policy decision, we must affirm. See Autery v. United States, 992 F.2d 1523, 1530 (11th Cir.1993) (since no regulation required park to cut tree that fell on automobile, and decision not to cut tree is a policy choice made by rangers with the authority to make such decisions, injured driver cannot establish subject matter jurisdiction). On the other hand, if the regulation required the rangers to cut the trees like the one that fell on the plaintiffs, the failure to cut such trees cannot be a "discretionary function," and we must reverse the grant of summary judgment in favor of the government.
 
 
 4
 The regulation in question is found in the Land and Resource Management Plan, Nantahala and Pisgah National Forests, United States Department of Agriculture (1987) ("Plan"). The Plan directs the rangers in maintaining trails by assigning different "maintenance levels" to the various trails in the area. The Plan's provision for "Hazard Tree Removal," defined as the "[r]emoval of trees that could fall across the trail," reads:
 
 
 5
 Maintenance Levels
-------------------------------------------------------------------------------
 1 & 2 3 4 & 5
-------------------------------------------------------------------------------
Fell only trees likely to Fell all trees likely to Fell all dead or dying
 fall on or across trail. fall on trail. trees within trail
 Fell away from trail. Permissible to leave corridor. Prune dead
 Remove any slash from non-threatening snags. or dangerous branches
 corridor. No hazard tree Prune dead or dangerous overhanging trail.
 removal in wilderness. branches overhanging Dispose of slash
 FREQUENCY: 2 years or trail. Dispose of slash out-of-sight of
 less depending on timber and logs away from trail. FREQUENCY: 1
 type trail. FREQUENCY: 1 year or less.
 year.
 
 
 6
 Plan at G-9.
 
 
 7
 The parties agree that maintenance level 1 or 2 is applicable to the trail where the tree fell on the plaintiffs. However, they interpret the instructions for levels 1 and 2 in radically different ways. The plaintiffs say that the instruction to "fell only trees likely to fall on or across trail" means that the rangers must cut down all trees that are likely to fall on the trail. The United States says that the key word is "only." Under its reading, the level 1 and 2 instruction forbids rangers from cutting down trees that are not likely to fall on the trail, but lets them choose whether to cut down trees that might. The United States finds support for this interpretation in the level 3 instruction. Level 3 clearly orders the rangers to "fell all trees likely to fall on trail." The government contends that the Plan would not have used two different instructions--one ambiguous, one clear--to say the same thing.
 
 
 8
 A similar debate centers upon the meaning of the phrase "No hazard tree removal in wilderness." The government asserts that maintenance levels 1 and 2 apply to all wilderness areas, and that the above phrase actually forbids removal of hazardous trees from trails in such areas. The plaintiffs assert, on the other hand, that "wilderness" means the area around the trail, not the trail itself; and that the prohibition on removing trees from the deep forest has nothing to do with the rangers' duty to remove trees that may fall on hikers.
 
 
 9
 The district court held that the Plan gave the rangers discretion not to cut down hazardous trees in areas subject to maintenance level 1 or 2. Our de novo review confirms the district court's decision. The plaintiffs' reading of the text in the "level 1 & 2" column of the maintenance chart is a possible one if that text is examined in isolation. However, the government's reading, equally feasible in isolation, better fits the other provisions and general logic of the Plan.
 
 
 10
 Most convincing is the instruction to cut "all" hazardous trees in the level 3 column. The government is correct that the use of this stronger language would be meaningless under the plaintiffs' interpretation of the Plan. But there is additional support for the government's reading. One of the goals of the Plan is to "[a]llow visitors to experience a wilderness environment by not reducing or eliminating personal risks associated with adverse weather conditions, isolation, natural physical hazards, and primitive travel and communication." Plan at III-101. Rangers are directed to "[e]ncourage visitors not desiring a wilderness experience or lacking in outdoor experience to use other areas of the Forest." Id. at III-102. Such statements display a policy interest in keeping the forest wild and, to a certain extent, dangerous. In regard to the debate about whether trails in the wilderness are wilderness, the Plan says: "Manage section of trails that leave Wilderness and pass through other management areas according to the standards of that management area." Id. at III-106. This language implies that trails in a type of area are to be managed as part of the area through which they wind. See also Zumwalt v. United States, 928 F.2d 951, 955-56 (10th Cir.1991) (decision to leave a trail in its natural state is an integral part of decision to leave an area unimproved).
 
 
 11
 Also relevant is the statutory definition of wilderness in the National Wilderness Act, which applies to the area in which the plaintiffs were hiking.
 
 
 12
 A wilderness, in contrast with those areas where man and his own works dominate the landscape, is hereby recognized as an area where the earth and its community of life are untrammled by man, where man himself is a visitor who does not remain. An area of wilderness is further defined to mean in this chapter an area of undeveloped Federal land retaining its primeval character and influence, without permanent improvements or human habitation, which is protected and managed so as to preserve its natural conditions and which (1) generally appears to have been affected primarily by the forces of nature, with the imprint of man's work substantially unnoticeable; (2) has outstanding opportunities for solitude or a primitive and unconfined tap of recreation; (3) has at least five thousand acres of land or is of sufficient size as to make practicable its preservation and use in an unimpaired condition; and (4) may also contain ecological, geological, or other features of scientific, educational, scenic, or historical value.
 
 
 13
 16 U.S.C. § 1131(c).
 
 
 14
 For these reasons, we hold that the Plan gives the rangers discretion in deciding whether or not to cut down rotten trees in the wilderness area where the plaintiff was hiking. Since the plaintiffs do not dispute that a decision not to cut down trees is a policy decision, Appellant's Brief at 12, the district court correctly dismissed their case.
 
 II
 
 15
 The plaintiffs also claim that the district court erred when it converted the United States' motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) to a motion for summary judgment under Fed.R.Civ.P. 56. We disagree. The district court correctly understood the two functions of a Rule 12(b)(1) motion, and ruled appropriately.
 
 
 16
 A Rule 12(b)(1) motion contains two separate challenges. The first concerns the complaint. The complaint must allege facts sufficient to indicate the presence of subject matter jurisdiction. If it does not, the complaint should be amended, or the case dismissed. In a suit under the Federal Tort Claims Act, the complaint must "allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." Gaubert, 499 U.S. at 325, 111 S.Ct. at 1275. The plaintiffs' initial complaint did not allege facts to show that the challenged decision was not a policy decision. Their initial complaint, therefore, was vulnerable to a Rule 12(b)(1) challenge. However, the plaintiffs amended their complaint after receipt of the Motion to Dismiss by the United States. Their amended complaint alleges "violations of the defendant's Land and Resource Management Plan." Plaintiffs' Motion to Amend at 1. Since an act that violates a regulation is not a policy decision, Gaubert, 499 U.S. at 324, 111 S.Ct. at 1274, the plaintiffs' amended complaint alleges facts sufficient to establish subject matter jurisdiction.
 
 
 17
 A Rule 12(b)(1) motion is also a challenge to the factual existence of subject matter jurisdiction. Regardless of what the complaint says, the court has no subject matter jurisdiction if the factual predicates of subject matter jurisdiction do not exist. E.g., KVOS, Inc. v. Associated Press, 299 U.S. 269, 280, 57 S.Ct. 197, 201 (1936) (dismissing case because allegation of jurisdictional facts not credible). When the defendant challenges the allegation of a jurisdictional prerequisite, sometimes the prerequisite will have nothing to do with the merits of the case. An obvious example is the citizenship of a party when subject matter jurisdiction rests on 28 U.S.C. § 1332. A court is authorized to hold an evidentiary hearing to determine such a prerequisite, and the plaintiff has the burden of proof by a preponderance of the evidence. See Ohio Nat. Life Ins. Co. v. United States, 922 F.2d 320, 327 (6th Cir.1990) (such hearings can be held in the discretion of the district court).
 
 
 18
 The situation becomes more complex when the prerequisite fact or legal conclusion also relates to the merits of a plaintiff's case. In this case, for example, the jurisdictional question of whether the rangers violated the applicable regulations concerning dangerous trees is interwoven with the question of whether the rangers acted negligently. In such situations, resolving the complex Rule 12(b)(1) motion first, and the merits of the issue later on a motion for summary judgment, makes little sense. In its discretion, therefore, the district court may treat the 12(b)(1) motion as a motion for summary judgment, allowing the parties to conduct discovery, submit evidence, and contest the critical elements of the case in a single procedure. See, e.g., Sierra Club v. Shell Oil Co., 817 F.2d 1169 (5th Cir.1987) (when plaintiff fails to establish dispute over existence of fact essential to subject matter jurisdiction and to merits of claim, court should grant summary judgment rather than dismiss under Rule 12(b)(1)).
 
 
 19
 The conversion of the motion to dismiss into a motion for summary judgment has preclusive effect. Preclusive effect is not troublesome as long as the jurisdictional issue decided under the converted motion would bar recovery in any court. In this case, once it is established that the rangers were making a policy decision, the plaintiffs cannot recover for their injuries under federal law, regardless of the forum in which they bring their claims. The preclusive effect of a conversion to a summary judgment motion becomes problematic only when the jurisdictional issue is relevant only to federal courts, and the res judicata effect of a dismissal on that issue could threaten a plaintiff's ability to bring unaddressed claims in a state action. In such circumstances, a district court should not convert even a complicated 12(b)(1) motion.
 
 
 20
 The second consequence is that our standard of review of factual findings may change. When a district court dismisses on a Rule 12(b)(1) motion premised on a factual finding, we review that finding for clear error. Ohio Nat. Life, 922 F.2d at 326. When a district court dismisses on a motion for summary judgment, we review de novo and will reverse if there is "a genuine issue as to any material fact." Harrow Prods. Inc. v. Liberty Mut. Ins. Co., 64 F.3d 1015, 1019 (6th Cir.1995). The latter standard is obviously easier for the plaintiff to meet on appeal. In the present case, we note that the distinction is inapposite. The plaintiffs' appeal concerns a purely legal issue: the meaning of the Plan.
 
 
 21
 Because the question of the park officials' discretionary authority is interwoven with the core of the dispute, and resolution of this issue would bar recovery under federal law in any tribunal, the district court did not abuse its discretion by converting the Rule 12(b)(1) motion to a motion for summary judgment.
 
 III
 
 22
 We agree with the district court's resolution of both issues on appeal. Therefore the dismissal of the plaintiffs' case is AFFIRMED.