**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 10, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA, ex rel. BOBBY MAXWELL,

      Plaintiffs-Appellants,

    v.

KERR-McGEE OIL & GAS CORPORATION, a Delaware corporation,

      Defendant-Appellee.

---

UNITED STATES OF AMERICA,

      Amicus Curiae.

No. 07-1193

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 04-CV-01224-PSF-CBS)**

---

Sean Connelly,[*] Reilly Pozner, LLP, Denver, Colorado (Michael S. Porter, The Law Firm of Michael S. Porter, Wheat Ridge, Colorado and Richard C. LaFond, Richard C. LaFond, P.C., Denver, Colorado with him on the briefs), for Plaintiffs-Appellants.

Marie R. Yeates, Vinson & Elkins L.L.P., Houston, Texas (Penelope E. Nicholson and Abigail W. Giraud, Vinson & Elkins L.L.P., Houston, Texas and Scott S.

---

   [*] Mr. Connelly withdrew his representation on July 28, 2008. He submitted the brief, however, and appeared on behalf of the appellants at oral argument.

Barker, Marcy G. Glenn, Gregory E. Goldberg, Danielle R. Voorhees, Holland & Hart L.L.P., Denver, Colorado with her on the brief), for Defendant-Appellee.

Charles W. Scarborough, Office of the United States Attorney, Washington, D.C. (Troy A. Eid, Peter D. Keisler, and Douglas N. Letter, with him on the brief), for Amicus Curiae.

---

Before **McCONNELL**, **SEYMOUR** and **HOLMES**, Circuit Judges.

---

**McCONNELL**, Circuit Judge.

---

Mr. Bobby Maxwell, a senior auditor for the United States Department of the Interior, brought this *qui tam* action against oil and gas producer Kerr-McGee Oil & Gas Corporation for defrauding the federal government by underpaying royalties for federal offshore oil leases. After the jury returned a $7.5 million verdict for Mr. Maxwell, the district court reversed its prior ruling on whether the court had subject matter jurisdiction to hear the case. The court determined that information underlying the suit had previously been disclosed to the public, thereby removing jurisdiction under the False Claims Act, 31 U.S.C. § 3730(e)(4). We now hold that the transfer of information between a federal employee and a state government auditor who is under a duty of confidentiality is not a public disclosure and therefore does not deprive the courts of jurisdiction.

**I.**

Mr. Maxwell was a senior government auditor for the Minerals Management Service ("MMS"), a division within the United States Department of

the Interior. In 2002, the MMS began an investigation of royalty reporting by Kerr-McGee arising from crude oil produced from federal offshore leases and sold to Texon L.P. Mr. Maxwell was the senior auditor on the team assigned to the investigation, and in the course of that investigation "reached the conclusion that Kerr-McGee had substantially underpaid its federal oil royalties." Am. Comp. ¶ 56. Kerr-McGee had reported the sales value of oil for royalty purposes without including the fair market value of marketing services provided by Texon as partial consideration, resulting in a royalties underpayment of around $10 million.

On November 15, 2002, Mr. Maxwell sent an audit issue letter to Kerr-McGee containing a preliminary determination that Kerr-McGee had underpaid royalties owed to the federal government on its leases. Kerr-McGee submitted a written response to MMS disputing the findings contained in the letter. Mr. Maxwell then drafted an order for payment of additional royalties, which he submitted to his senior manager. MMS did not issue the order of payment.

On June 14, 2004, Mr. Maxwell filed a *qui tam* action against Kerr-McGee under the False Claims Act ("FCA"). 31 U.S.C. § 3729. He alleged that, based on the information uncovered during his audit, "Kerr-McGee knowingly made false and/or fraudulent statements on the monthly royalty reports submitted to the MMS and 'understated and underpaid' its federal royalties." *Maxwell v. Kerr-*

*McGee Oil & Gas Corp.*, 486 F.Supp. 2d 1217, 1221 (D. Colo. 2007). The United States declined to intervene in the suit.

Before trial, Kerr-McGee filed a motion for summary judgment for lack of subject matter jurisdiction under the FCA. 31 U.S.C. § 3730(e)(4). The court denied the motion, concluding that (1) government auditors were not necessarily barred from acting as relators under the FCA, and (2) that Mr. Maxwell was a "direct and independent" source of the information on which his allegations were based and voluntarily provided the information to the government before filing the action. *United States ex rel. Maxwell v. Kerr-McGee Chemical Worldwide, LLC*, 2006 WL 1660538 (D. Colo. June 9, 2006). The case proceeded to trial and the jury awarded damages of $7,555,886.28. Before entering judgment, however, the court reconsidered and reversed its prior holding, this time determining that the court lacked jurisdiction to hear the case. *Maxwell*, 486 F.Supp. 2d at 1222.

The court concluded that the information underlying the suit had been publicly disclosed in an e-mail exchange between David Darouse, an employee of the State of Louisiana, and Roman Geissel, an MMS agent, in early April 2003. An e-mail, sent by Mr. Darouse to Mr. Geissel dated April 1, 2003, requested a copy of the Kerr-McGee/Texon contract from August 1995 to December 2001. In that e-mail, Mr. Darouse stated: "We analyzed the prices being paid by Texon to Kerr and found them to be FAR below gravity adjusted market indices." App. 2989. The following day, Mr. Geissel replied: "We have done a lot of work at

Kerr and found numerous problems which will result in a significant underpayment." App. 2989. The court found this exchange to be a public disclosure of the facts underlying Mr. Maxwell's suit and that Mr. Maxwell did not fall within the original source exception, resulting in a lack of jurisdiction under the FCA. We disagree and hold that the limited disclosure of information to a government official under a duty of confidentiality is not a "public disclosure."

## II

The statutory language at issue in this case is primarily found in the 1986 amendments to the False Claims Act, which broadened the class of qui tam actions falling within the proper jurisdiction of the courts. The prior version of the Act removed jurisdiction over suits "whenever it shall be made to appear that such suit was based upon evidence or information in the possession of the United States, or any agency, officer or employee thereof, at the time such suit was brought." 31 U.S.C. § 232(C) (1946). This language effectively prevented any federal employee from filing a qui tam action and thereby eliminated any incentive provided by the FCA for government employees to seek out fraudulent activity and bring it to light.

In response, Congress adopted the 1986 amendments "to enhance the Government's ability to recover losses sustained as a result of fraud against the Government." S. Rep. No. 99-345, at 1 (1986), *reprinted in* 1986 U.S.C.C.A.N.

5266, 5266.  The "overall intent" was "to encourage more private enforcement suits." *Id.* at 23-24, *reprinted in* 1986 U.S.C.C.A.N. at 5288–89.  One feature of these amendments was to provide a more permissive jurisdictional limitation: "No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a . . . Government Accounting Office report, hearing, audit, or investigation.  . . ." 31 U.S.C. § 3730(e)(4).  By focusing not on whether the underlying information was known to the United States, but rather whether the information was within the public domain, the amendment sought to further the dual goals of the FCA in "avoidance of parasitism and encouragement of legitimate citizen enforcement actions."  *United States ex rel. Springfield Terminal Ry. Co. v. Quinn,* 14 F.3d 645, 651 (D.C. Cir. 1994).

Kerr-McGee contends that even under the more expansive scope of the FCA as amended, the court lacks jurisdiction to hear Mr. Maxwell's suit.  First, it argues that a governmental employee who acquires the information in the course of his official duties cannot serve as a relator for a suit based on that information.  Kerr-McGee acknowledges that this argument may be foreclosed by our en banc decision in *United States ex rel. Holmes v. Consumer Ins. Group*, 318 F.3d 1199 (10th Cir. 2003), but seeks to preserve it for further review.  Second, Kerr-McGee argues, and the district court agreed, that the exchange of e-mails between Mr. Darouse and Mr. Geissel constituted a public disclosure under the FCA's

jurisdictional bar, thereby removing jurisdiction over any suit based on information contained therein. It is on this issue that we reverse the district court. Lastly, we reject Kerr-McGee's argument that a prior suit related to alleged fraudulent royalty underpayment by Kerr-McGee constituted a public disclosure upon which Mr. Maxwell's suit was based.

### A. *Government Employee as Relator*

Section 3730(b)(1) provides, in pertinent part, that "[a] person may bring a civil action for a violation of section 3729 for the person and for the United States Government." 31 U.S.C. § 3730(b)(1). We held in our en banc decision in *Holmes* that "a government employee who obtains information about fraud in the scope of his or her employment, and who is required to report that fraud" is a "person" under § 3730(b)(1) and is not otherwise prevented from acting as a relator. 318 F.3d at 1204.

Kerr-McGee attempts to distinguish *Holmes* on the basis that the relator in that case discovered the fraud during her lunch break, in an investigation not within her official duties. Our analysis in *Holmes*, however, did not turn on whether or not the fraud was discovered in the employee's official capacity. The lack of limiting language on the broad term "person" as used in § 3730(b)(1) provides no basis for concluding that government employees, whether acting in their official capacity or not, are excluded from the scope of the statute. Prior to the 1986 amendments, federal employees were effectively barred from bringing

qui tam suits because of the jurisdictional exemption for suits based on information already known to the United States. 31 U.S.C. § 232(C) (1946). But the 1986 amendments allow suits based on such information as long as it is not publicly disclosed, and therefore do not prevent federal employees from acting as relators. In *Holmes*, we explicitly adopted the Supreme Court's reasoning in *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 546–48 (1943), which interpreted a predecessor to the current FCA: "even a district attorney, who would presumably gain all knowledge of a fraud from his official position, might sue as the informer." *Marcus*, 317 U.S. at 546. We conclude, therefore, that Mr. Maxwell was not prevented from serving as a relator on the basis that he is a federal auditor who discovered the information underlying his suit in his official governmental role.

*B. Public Disclosure*

The FCA as amended in 1986 removes jurisdiction over suits "based upon the public disclosure of allegations or transactions in a . . . Government Accounting Office report, hearing, audit, or investigation. . . ." 31 U.S.C. § 3730(e)(4). This case presents the question of whether the transfer of information to a state government employee who is under a duty of confidentiality with respect to that information is a "public disclosure" for purposes of § 3730(e)(4). We hold that insofar as the communication does not release the information into the public domain such that it is accessible to the general population, it is not.

-8-

This reading of § 3730(e)(4) comports with the meaning most commonly attached to the term "public" and furthers "the golden mean between adequate incentives for whistle-blowing insiders with genuinely valuable information and discouragement of opportunistic plaintiffs who have no significant information to contribute of their own." *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 649 (D.C. Cir. 1994).

The primary definition of the term "public," as used in this context, is "open to general observation, sight, or cognizance; existing, done, or made in public; manifest; not concealed." *Oxford English Dictionary* (2d ed. 1989). *See also Blacks Law Dictionary* 1242 (7th ed. 1999) ("open or available for all to use, share, or enjoy"). A communication to an individual who is under a duty to keep the information to himself is not publicly made because it remains concealed from the general population. Similarly, the term "disclosure" is defined as the release of information or knowledge into the open: "to open up to the knowledge of others; to make openly known;" "to open up;" "to unclose." *Oxford English Dictionary* (2d ed. 1989) (defining "disclose"). Therefore we interpret "public disclosure" to require release of information such that it is generally available and not subject to obligations of confidentiality. Communications made to individuals outside the federal government are not necessarily public disclosures; rather,

there must be further investigation to determine whether the information entered

the public domain by such communication.[1]

This reading of § 3730(e)(4) is supported by our precedent. We and other

circuits commonly speak of the jurisdictional limits on the FCA as excluding suits

based on information in the public domain. "A public disclosure happens when

the critical elements exposing the transaction as fraudulent are placed in the

public domain." *United States ex rel. Feingold v. AdminaStar Federal, Inc.*, 324

F.3d 492, 495 (7th Cir. 2003); *United States ex rel. Rabushka v. Crane Co.,* 40

F.3d 1509, 1512 (8th Cir.1994); *United States ex rel. Springfield Terminal Ry.*

*Co. v. Quinn,* 14 F.3d 645, 654 (D.C. Cir. 1994); *see also Kennard v. Comstock*

*Resources, Inc.*, 363 F.3d 1039, 1045 (10th Cir. 2004); *United States ex rel. Rost*

*v. Pfizer, Inc.*, 507 F.3d 720, 730 (1st Cir. 2007) (quoting *United States ex rel.*

*Findley v. FPC-Boron Employees' Club*, 105 F.3d 675, 684 (D.C. Cir. 1997)).

Our prior holding that a public disclosure may occur by the transfer of

information to a single individual does not conflict with this interpretation.

*Kennard*, 363 F.3d at 1043 ("[D]isclosure to a single filing clerk was enough in

the instant case because the filing of the civil action in itself was the affirmative

act of disclosure. . . . [A] public disclosure can occur to a single person.");

*Holmes*, 318 F.3d at 1206 n.5. If that individual is under no obligation to keep

---

[1] This case involves disclosure to a state government employee. We need not consider in this case whether disclosure to a private citizen under a legal obligation of confidentiality would be a "public disclosure."

the information confidential, then it is at least theoretically available to the general public and, in that respect, openly revealed. In *United States ex rel. Fine v. MK-Ferguson Co.*, 99 F.3d 1538 (10th Cir. 1996), we held that an audit report by the Department of Energy released to the state of Oregon was publicly disclosed because the DOE had not imposed "limitations on the public availability of the report nor restrained in any way its dissemination by Oregon." *Id.* at 1542. Information revealed to another party during discovery is likewise a public disclosure only when those materials are filed with the court. *See Mathews v. Bank of Farmington,* 166 F.3d 853, 860 (7th Cir. 1999) (citing *United States ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1521 (10th Cir. 1996)). "[D]iscovery material which has not been filed with the court and is only theoretically available upon the public's request is not publicly disclosed within the meaning of § 3730(e)(4)(A)." *Mathews*, 166 F.3d at 860 (citing *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 652 (D.C. Cir. 1994) (internal quotations omitted)).

The e-mail exchange between Mr. Darouse and Mr. Geissel, in contrast to the above examples, was subject to confidentiality limitations because it was the product of an on-going government audit. Mr. Darouse stated in an affidavit that the "e-mail was placed in an ongoing audit file of Kerr-McGee. Pursuant to the policies and procedures of the Louisiana Department of Natural Resources, the contents of an ongoing audit file are never made available to the public while the

-11-

audit is ongoing. The contents of an ongoing audit file are maintained privileged and confidential." App. 2479. Both Mr. Darouse and other members of the state audit team were under an obligation not to disclose the information, at least while the audit was ongoing. Therefore, the information was not within the public domain and the e-mail exchange was not a "public disclosure" that would remove jurisdiction over Mr. Maxwell's suit from the courts.

Interpreting the FCA to establish release of information into the public domain as the trigger to remove subject matter jurisdiction fits with the purposes of the Act and the 1986 amendments. "Section 3730 – civil actions for false claims, has two basic goals: 1) to encourage private citizens with first-hand knowledge to expose fraud; and 2) to avoid civil actions by opportunists attempting to capitalize on public information without seriously contributing to the disclosure of the fraud." *United States ex rel. Precision Co. v. Koch Industries, Inc.*, 971 F.2d 548, 552 (10th Cir. 1992). Allowing private suits when information underlying the action is known only to federal and state auditors under a duty of confidentiality sets up appropriate incentives and balances these dual goals. It encourages suits when the fraud may not have been brought to the attention of appropriate government officials or when there is insufficient public pressure to "spur [the government] into acting upon the information." *United States ex rel. Mistick PBT v. Housing Authority of City of Pittsburgh*, 186 F.3d 376, 401–02 (3d Cir. 1999); *United States ex rel. Findley v. FPC-Boron*

*Employees' Club*, 105 F.3d 675, 685 (D.C. Cir. 1997). On the other hand, allowing jurisdiction over suits based on information that had been conveyed only to a state auditor under a duty of confidentiality is unlikely to result in parasitic lawsuits based on information gathered by others. *See Holmes*, 318 F.3d at 1207 (noting that it is "possible for a government employee to file a parasitic qui tam action (e.g., based on knowledge obtained secondhand through other employees)"). In this case, it may well have violated his obligation to maintain the privileged and confidential nature of the contents of the ongoing audit file for Mr. Darouse, or any other member of the Louisiana audit team, to bring a qui tam suit based on the information provided in the e-mail from Mr. Geissel.[2]

### C. The Johnson *Litigation as a Public Disclosure*

Kerr-McGee's final argument is that the information upon which Mr. Maxwell's suit was based was publicly disclosed in the course of the litigation and settlement of *United States ex rel. Johnson v. Shell Oil Co.*, 33 F.Supp. 2d 528 (E.D. Tex. 1999). *Johnson* was a federal *qui tam* action filed against Kerr-McGee for the alleged fraudulent underpayment of royalties on federal leases covering a period from 1988 through 1998. If Mr. Maxwell's suit is "based upon"

---

[2]The contents of the e-mail exchange between Mr. Darouse and Mr. Geissel may also have been too vague to qualify as a public disclosure of an allegation or transaction with "substantial identity" to Mr. Maxwell's detailed allegations of fraud. Because we find that the exchange did not constitute a public disclosure, however, we need not reach this issue.

information publicly disclosed in *Johnson*, then the court would have no subject matter jurisdiction to hear the case.

A suit is based upon a public disclosure if its "allegations are substantially similar" to the information revealed. *Kennard*, 363 F.3d at 1044 (internal quotations omitted). We conclude that because Mr. Maxwell's suit is based upon conduct occurring after the period of time covered in the *Johnson* litigation and a distinct fraudulent scheme, Mr. Maxwell's allegations are not "based upon" that suit. Although we have held that a subsequent lawsuit can be "based upon" allegations made in a prior lawsuit even when the two suits cover different periods of time, the "essential claim[s]" must be substantially "similar." *United States ex rel. Boothe v. Sun Healthcare Group, Inc.*, 496 F.3d 1169, 1173 (10th Cir. 2007).

The publicly filed documents in *Johnson* make no mention of Texon or the oil-for-services exchange practices at issue here. App. 3362–63. Although the *Johnson* settlement did include some Texon contracts, those contracts were not publicly available. App. 2516–17. The general allegation that Kerr-McGee was involved in fraudulent underpayment of royalties for offshore oil leases is not sufficiently specific to constitute a public disclosure because it is not in itself "enough information to discover related frauds," such as the fraud underlying Mr. Maxwell's suit. *Boothe*, 496 F.3d at 1173.

-14-

**III**

Because we hold that neither the e-mail exchange between Mr. Darouse and Mr. Geissel nor the *Johnson* litigation constituted a public disclosure for purposes of 31 U.S.C. § 3730(e)(4), and that Mr. Maxwell may properly act as a relator, we **REVERSE** the district court's dismissal of the case for lack of subject matter jurisdiction and **REMAND** for further proceedings.