RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0033p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA, et al.,

*Plaintiffs,*

ROBERT WHIPPLE,

*Plaintiff-Appellant,*

No. 13-6645

*v.*

CHATTANOOGA-HAMILTON COUNTY HOSPITAL AUTHORITY, dba Erlanger Medical Center, dba Erlanger Health System,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:11-cv-00206—Todd J. Campbell, District Judge.

Argued: September 30, 2014

Decided and Filed: February 25, 2015

Before: GUY, CLAY, and WHITE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Jamie M. Bennett, ASHCRAFT & GEREL, LLP, Landover, Maryland, for Appellant. Jeffrey S. Bucholtz, KING & SPALDING LLP, Washington, D.C., for Appellee. **ON BRIEF:** Jamie M. Bennett, Nathan M. Peak, ASHCRAFT & GEREL, LLP, Landover, Maryland, Brian J. Markovitz, Jay P. Holland, Meredith L. Schramm-Strosser, JOSEPH, GREENWALD & LAAKE, P.A., Greenbelt, Maryland, for Appellant. Jeffrey S. Bucholtz, KING & SPALDING LLP, Washington, D.C., Lynn M. Adam, KING & SPALDING LLP, Atlanta, Georgia, for Appellee. David J. Chizewer, GOLDBERG KOHN LTD, Chicago, Illinois, for Amicus Curiae.

1

---

**OPINION**

---

RALPH B. GUY, JR., Circuit Judge.  Robert Whipple, the relator in this *qui tam* action, appeals from the district court's determination that certain claims he brought under the federal False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1), were jurisdictionally barred under the FCA's public-disclosure bar, 31 U.S.C. § 3730(e)(4).  Finding there was not a "public disclosure" sufficient to trigger the jurisdictional bar, we need not decide whether the original-source exception to that bar would apply here.  The dismissal of these claims is REVERSED and the matter is REMANDED for further proceedings consistent with this opinion.[1]

**I.**

The FCA imposes civil liability on those who submit false or fraudulent claims for payment to the United States, 31 U.S.C. § 3729(a)(1), "and authorizes *qui tam* suits, in which private parties bring civil actions in the Government's name, § 3730(b)(1)." *Schindler Elevator Corp. v. United States ex rel. Kirk*, 131 S. Ct. 1885, 1889 (2011).  If a *qui tam* action is successful, the party bringing it—known as the relator—shares in the proceeds of the action or settlement.  *See* 31 U.S.C. § 3730(d).  A relator seeking to bring a *qui tam* action under the FCA must first disclose his claims to the government, and then the government decides whether to take over the action or allow the relator to proceed.  *See id.* at § 3730(b).  The FCA places several other restrictions on a relator's ability to bring a *qui tam* action, one of which is the public-disclosure bar at issue here.  *See United States ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 507 (6th Cir. 2009).

This action alleged, in part, that defendant Chattanooga-Hamilton Hospital Authority, d/b/a Erlanger Medical Center and Erlanger Health System ("Erlanger"), violated the FCA by knowingly submitting false or fraudulent claims for reimbursement to federally funded healthcare programs (including Medicare, Medicaid, and Tricare/Champus).  Specifically, as

---

[1]The complaint also alleged that false claims were made in violation of Tennessee, North Carolina, and Georgia statutes, which the district court dismissed under each state's parallel public-disclosure bar.  Whipple has abandoned any arguments concerning those state law claims by failing to raise them on appeal.

grouped into categories by the district court, the complaint alleged that Erlanger had submitted fraudulent claims for: (1) inpatient care for patients who should have been billed on an outpatient or observation basis (short-stay claims); (2) observation services improperly added to charges for outpatient surgeries (same-day-surgery claims); (3) inpatient admissions of patients in order to bill for hemodialysis procedures that would not be reimbursable if performed on an outpatient basis (renal-dialysis claims); and (4) carotid artery stenting procedures performed without receiving authorization (stent claims). Whipple maintained that he discovered the alleged fraud during the six-month period that he worked at Erlanger in early 2006, first as a Revenue Cycle Consultant on assignment from ACS Healthcare Solutions and then as Erlanger's Interim Director of Care Management.[2]

Whipple testified that he identified the fraud by analyzing past billing data, reviewing patient records, and observing operations in each of the revenue cycle departments. He also claimed to have direct knowledge of the fraudulent practices from supervising patient admissions, planning discharges, and reviewing the submission of claims for payment. Unbeknownst to Whipple, the government conducted an audit and investigation into concerns that Erlanger had improperly billed Medicare for inpatient admissions. The audit began with a request for records from Erlanger in November 2006. An administrative investigation was opened in February 2008, and the matter was resolved administratively without a hearing by Erlanger's payment of a refund to the government of $477,140.42 in September 2009.

Whipple disclosed his *qui tam* claims to the United States in October 2010, a complaint alleging those claims was filed under seal in March 2011, and the United States declined to intervene in Whipple's action in April 2012. Erlanger promptly moved to dismiss the complaint on several grounds, including lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). The district court denied the motion without prejudice in March 2013, concluding that subject matter jurisdiction should be decided on a more developed factual record. After limited discovery, Erlanger moved for partial summary judgment with respect to the short-stay, same-day-surgery, and renal-dialysis claims. The district court granted the motion, dismissing those

---

[2]ACS was retained by Erlanger, at the behest of its bond insurer, after Erlanger settled an unrelated investigation in late 2005 by agreeing to pay $40 million to the Department of Health and Human Services ("HHS") and abide by a Corporate Integrity Agreement ("CIA").

FCA claims as jurisdictionally barred.  Whipple's motion for reconsideration was denied, and the remaining claim was dismissed by stipulation in November 2013.  This appeal followed.

## II.

"As originally enacted, the FCA did not limit the sources from which a relator could acquire the information to bring a *qui tam* action."  *Graham Cnty. Soil & Water Conserv. Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 293-94 (2010).  Congress amended the FCA in 1943 in order "to preclude *qui tam* actions 'based upon evidence or information in the possession of the United States, or any agency, officer or employee thereof, at the time such suit was brought.'"  *Id*. at 294 (citation omitted).  But that limitation—referred to as the government-knowledge bar—proved to be too restrictive, and "the volume and efficacy of *qui tam* litigation dwindled."  *Id*.

Congress overhauled the FCA again in 1986, this time replacing the government-knowledge bar with the public-disclosure bar set forth in § 3730(e)(4).  *Id*. (explaining that Congress was "'[s]eeking the golden mean between adequate incentives for whistle-blowing insiders with genuinely valuable information and discouragement of opportunistic plaintiffs who have no significant information to contribute of their own'") (quoting *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 649 (D.C. Cir. 1994)).  Although Congress amended this section again in 2010, it is the 1986 version of § 3730(e)(4) that we apply in this case.[3]

The public-disclosure bar enacted in 1986 is recognized to be a clear and explicit withdrawal of subject matter jurisdiction.  *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 467-70 (2007).  Specifically, § 3730(e)(4) provides that no court shall have jurisdiction over a *qui tam* action that is:

> "based upon the public disclosure of allegations or transactions [1] in a criminal, civil, or administrative hearing, [2] in a congressional, administrative, or [GAO]

---

[3]Substantive amendments to § 3730(e)(4) were enacted March 23, 2010—after the alleged misconduct occurred and before Whipple filed his *qui tam* complaint in 2011.  *See* Patient Protection and Affordable Care Act ("PPACA"), Publ. L. 111-148, § 10104(j)(2), 124 Stat. 119, 901-02 (2010).  Whipple has not argued or offered analysis supporting application of the 2010 amendments to his claims, but asserted instead that he would qualify as an original source under either version.  Issues averted to in a perfunctory manner and without developed argumentation are deemed waived.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

report, hearing, audit, or investigation, or [3] from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information."

*Graham*, 559 U.S. at 286 (quoting § 3730(e)(4)(A) (1986)) (footnote omitted) (alteration in original). The FCA defines "original source" as an individual "who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." 31 U.S.C. § 3730(e)(4)(B) (1986).

To determine whether the public-disclosure bar applies, we consider, "first whether there has been any public disclosure of fraud [through one of the specified channels], and second whether the allegations in the instant case are 'based upon' the previously disclosed fraud." *Poteet*, 552 F.3d at 511 (quoting *United States ex rel. Gilligan v. Medtronic, Inc.*, 403 F.3d 386, 389 (6th Cir. 2005)) (internal quotation marks omitted). If either requirement is not satisfied, the bar does not apply and the *qui tam* action may proceed. *Id*. If both requirements are satisfied, the relator's suit may nonetheless proceed if he qualifies as an "original source." *Id*.

For the reasons that follow, we find that the district court erred in concluding that there was "public" disclosure of fraud through the prior administrative audit and investigation of Erlanger's inpatient billing practices. *See Graham*, 559 U.S. at 286-87 (holding "administrative" refers to activities of governmental agencies or their contractors).[4]

## A.     Standard of Review

Whipple contends that the district court erred by failing to evaluate Erlanger's motion using the standards applicable to a motion for summary judgment under Fed. R. Civ. P. 56(a). Despite the summary-judgment label given to Erlanger's motion, the district court's reasoning and analysis explicitly recognized the motion to be a factual attack on subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). When a Rule 12(b)(1) motion is a factual attack, as opposed to facial, on subject matter jurisdiction, "no presumptive truthfulness applies to the allegations" and "the district court must weigh the conflicting evidence to arrive at the factual predicate that

---

[4]*Graham* held that "administrative" encompassed the activities of federal, state, or local government, but the current version of the statute narrows qualifying disclosures to those made in a "Federal report, hearing, audit, or investigation." 31 U.S.C. § 3730(e)(4)(A)(ii) (2010).

subject matter does or does not exist." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). There is a caveat, however. When a factual attack on subject matter jurisdiction "also implicates an element of the cause of action, then the district court should 'find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's claim.'" *Id*. (citation and emphasis omitted); *see also Wright v. United States*, 82 F.3d 419, 1996 WL 172119, *4 (6th Cir. 1996) (Table).

Whipple contends that the factual determination made with respect to the original-source exception was intertwined with the element of scienter—*i.e.*, whether Erlanger knowingly submitted fraudulent claims for reimbursement. But, in fact, the question whether Whipple had direct and independent knowledge of the information on which his allegations were based does not implicate the question whether Erlanger knowingly submitted false claims for reimbursement. Two other circuits have similarly held that the factual findings necessary to resolve an attack on subject matter jurisdiction under § 3730(e)(4) did not also implicate an element required to prove a substantive violation of the FCA under § 3729(a)(1). *See United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347-350 (4th Cir. 2009); *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514-15 (3d Cir. 2007); *but see United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 326 (5th Cir. 2011) (holding that a jurisdictional challenge under § 3730(e)(4) is necessarily intertwined with the merits).[5]

Because the district court properly evaluated Erlanger's motion under Rule 12(b)(1), we review the district court's factual findings for clear error and the application of the law to those facts *de novo*. *See United States v. A.D. Roe Co.*, 186 F.3d 717, 722 (6th Cir. 1999). The relator bears the burden of establishing the court's subject matter jurisdiction over his FCA claims. *Id*. at 722-23.

---

[5]Although the Fifth Circuit has taken the position that a challenge under the FCA's jurisdictional bar is necessarily intertwined with the merits because it arises out of the same statute, that rationale is inconsistent with this court's focus on whether the disputed fact implicates an element of the cause of action. *See United States ex rel. Laird v. Lockheed Martin Eng'g. and Sci. Servs. Co.*, 336 F.3d 346, 350 (5th Cir. 2003) (*abrogated on other grounds by Rockwell Int'l Corp. v. United States*, 549 U.S. at 457, 472 (2007)).

**B.      Public Disclosure of Fraud**

For the first requirement to be met—that there was a public disclosure of fraud in the prior administrative audit and investigation—"the disclosure must have (1) been public, and (2) revealed the same kind of fraudulent activity against the government as alleged by the relator." *Poteet*, 552 F.3d at 511. "[A] public disclosure reveals fraud if 'the information is sufficient to put the government on notice of the likelihood of related fraudulent activity.'" *Id*. at 512 (citation omitted). The disclosure need not specifically allege fraud, and the information may come from more than one source, as long as the information leads to an inference of fraud. *Id*. Although the audit and investigation disclosed facts from which fraud could be inferred, whether a public disclosure occurred is a separate question.

**1.      Administrative Audit and Investigation**

In April 2006, an anonymous tip received on a fraud hotline reported that Erlanger was improperly billing observation patients as inpatients. The United States Department of Health and Human Services ("HHS"), Office of Inspector General ("OIG"), received the complaint and referred it for review by AdvanceMed Corporation, which is the Medicare Part A Program Safeguard Contractor for Tennessee hired to perform "benefit integrity activities aimed to reduce fraud, waste, and abuse in the Medicare program." AdvanceMed, acting on behalf of the government, identified ninety claims for reimbursement from Medicare for inpatient admissions of two days or less from the period July 2005 through May 2006.

In November 2006, after Whipple had left Erlanger, AdvanceMed sent Erlanger a request for additional records and information supporting those claims. AdvanceMed's audit found evidence of upcoding based on a notably high error rate of 49%, identified four possible sources of errors and overpayments, and observed that upcoding would be a violation of Erlanger's 2005 Corporate Integrity Agreement. Those findings were outlined and communicated directly to the OIG's Office of Investigations in a Fraud Case Referral dated July 3, 2007.[6]

---

[6]AdvanceMed's audit of the records identified potential overpayments resulting from billing: "for services without a valid admission order," "for inpatient services that should have been billed as observation services," "for inpatient services when the physician ordered an observation status," and "for services that do not support the [Diagnosis Related Group] code billed."

In February 2008, the OIG's Office of Investigations opened an administrative investigation into whether the errors and potential overpayments identified by AdvanceMed's review violated criminal law. The Opening Investigative Memorandum also indicated that the investigation was being coordinated with the OIG's Office of Counsel to the Inspector General ("OCIG"), which was responsible for monitoring Erlanger's compliance with the Corporate Integrity Agreement. Erlanger was notified that it was under review by the OIG's Office in March 2008. Specifically, on March 19, 2008, Erlanger was advised by OIG Special Agent Jennifer Trussell that several concerns about Erlanger's inpatient billing practices had been identified from the sample of records reviewed by AdvanceMed. The record reflects that Agent Trussell communicated the issues to Erlanger's Chief Compliance Officer Alana Sullivan and outside counsel for Erlanger, Attorney Sara Kay Wheeler.[7]

Erlanger undertook an internal investigation and retained Deloitte Financial Advisory Services, LLP, as a billing consultant to review the issues raised and conduct a broader independent audit of one-day hospital stays from October 2005 through December 2007. Erlanger, its attorneys, and the auditors presented the results of the internal investigation to OIG Special Agent Trussell on May 29, 2008. Erlanger included the results of Deloitte's audit, which found that Erlanger had improperly billed for inpatient services (without a physician order, without a basis for a change in status, or without documentation to support the level of care) and for observation services after outpatient same-day surgeries. Erlanger offered explanations for the errors and estimated the amount of the overpayments it had received as a result.

The OIG's Office of Investigations consulted with the United States Attorney's Office for the Eastern District of Tennessee, and both the Civil and Criminal Divisions declined to pursue the matter in June 2008. The OCIG's Office received confidential communication from Erlanger's counsel outlining the investigation and compliance efforts, and the OCIG's portion of the investigation was closed in February 2009. At that point, the OIG referred the investigation to AdvanceMed for administrative resolution on behalf of the government. After further review, AdvanceMed estimated the amount of the overpayments resulting from the errors identified and

---

[7]Erlanger also learned that the OIG's Office of Investigation was reviewing issues with swing-bed billing at another Erlanger facility identified from a separate record review by AdvanceMed. Facts pertinent to that aspect of the investigation are omitted because they are not relevant to the issues in this appeal.

directed Erlanger to submit a voluntary refund check in the amount of $477,140.42. When Erlanger did so in September 2009, the investigation was administratively closed. There is no suggestion that further disclosure occurred before Whipple brought this action.

The district court found that there was a public disclosure of the alleged fraud, apparently accepting Erlanger's contention that the information was publicly disclosed "through the investigations, oversights and audits conducted by the government, consultants, attorneys and contractors." The district court also seems to have concluded, at least implicitly, that the disclosure was public simply because it occurred in the course of an administrative audit or investigation. Whipple contends that the information was not "publicly disclosed" because the information was disclosed privately and was not disseminated beyond the participants in the administrative audit and investigation.

### 2.    "Publicly Disclosed"

Although the Supreme Court has not construed the term "public disclosure" under § 3730(e)(4), the Court has cautioned "against interpreting the public[-]disclosure bar in a way inconsistent with a plain reading of its text." *Schindler*, 131 S. Ct. at 1892; *see also Graham*, 559 U.S. at 285 (explaining that the jurisdictional bar is triggered "when the relevant information has already entered the public domain through [one of the three categories of disclosures set forth in § 3730(e)(4)(A)]"). Erlanger urges this court to follow the lead of the Seventh Circuit, which has interpreted the term "public disclosure" to include the disclosure of an alleged false claim to a competent public official who has managerial responsibility for that very claim. *See United States ex rel. Mathews v. Bank of Farmington*, 166 F.3d 853, 861 (7th Cir. 1999), *overruled on other grounds*, *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907 (7th Cir. 2009). The court in *Bank of Farmington* reasoned, based on one definition of "public," that disclosure to a government official "authorized to act for or to represent the community on behalf of government can be understood as public disclosure." *Id*. The court found this was consistent with the general purposes of the FCA, and that "disclosure to the public official responsible for the claim effectuates the purpose of disclosure to the public at large." *Id*.

This court has not addressed the soundness of the Seventh Circuit's interpretation of "public disclosure", but all of the other circuits to do so have held that the plain meaning of

§ 3730(e)(4) requires some affirmative act of disclosure to the public outside the government. *See, e.g. United States ex rel. Wilson v. Graham Cnty. Soil & Water Conservation Dist.*, -- F.3d --, 2015 WL 427649, at *4-5 (4th Cir. Feb. 3, 2015) (noting that no circuit has adopted the Seventh Circuit's interpretation of "public disclosure"); *United States ex rel. Oliver v. Philip Morris USA Inc.*, 763 F.3d 36, 42 (D.C. Cir. 2014) (holding that the "three channels through which information can be made public for purposes of invoking the bar" do not include "[t]he government's own, internal awareness of the information"); *United States ex rel. Meyer v. Horizon Health Corp.*, 565 F.3d 1195, 1200 & n.3 (9th Cir. 2009) (citing cases); *United States ex rel. Maxwell v. Kerr-McGee Oil & Gas Corp.*, 540 F.3d 1180, 1186 (10th Cir. 2008) ("Interpreting the FCA to establish release of information into the public domain as the trigger to remove subject matter jurisdiction fits with the purposes of the Act and the 1986 amendments."); *United States ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720, 728-30 (1st Cir. 2007) (rejecting *Bank of Farmington* and citing cases), *overruled on other grounds by Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662 (2008). In *Rost*, a leading case involving disclosure of fraud to the government, the First Circuit rejected the Seventh Circuit's interpretation and held that "[t]he mere fact that the disclosures are contained in government files someplace, or even that the government is conducting an investigation behind the scenes, does not itself constitute public disclosure." *Rost*, 507 F.3d at 728. We agree.[8]

The plain meaning of § 3730(e)(4) "does not bar jurisdiction over *qui tam* actions based on disclosures of allegations or transactions to the government," but "only for actions based on qualifying disclosures made to the public." *Rost*, 507 F.3d at 728. If a disclosure to the government in an audit or investigation would be sufficient to trigger the bar, the term "public" would be superfluous. *Id.* at 729 ("If providing information to the government were enough to trigger the bar, the phrase 'public disclosure' would be superfluous."). Moreover, the Seventh Circuit's interpretation, which equates "government" with "public," is inconsistent with other uses of the term "government" in the FCA. *Id.* at 728; *accord United States ex rel. Cox v. Smith*

---

[8]This court has held, albeit in another context, that FOIA documents do not constitute public disclosures under the FCA until they are requested and received by someone. *See United States v. A.D. Roe Co.*, 186 F.3d 717, 723 (6th Cir. 1999) ("It would be extreme to hold that all information for which someone might potentially make a FOIA request is 'publicly disclosed.'"). In reaching that conclusion, the court recognized a distinction between actual and merely theoretical availability. *Id.* (discussing *United States ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512, 1519-20 (9th Cir. 1995), *vacated on other grounds*, 520 U.S. 939 (1997)).

*& Nephew, Inc.*, 749 F. Supp. 2d 773, 782-84 (W.D. Tenn. 2010) (holding that defendant's voluntary disclosure of information to government officials was not "public disclosure"). The public-disclosure bar "clearly contemplates that the information be in the public domain in some capacity and the Government is not the equivalent of the public domain." *Kennard v. Comstock Res., Inc.*, 363 F.3d 1039, 1043 (10th Cir. 2004); *see also United States ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512, 1518 (9th Cir. 1995) ("information that was 'disclosed in private' has not been publicly disclosed"). Accordingly, we conclude that Erlanger's disclosure of information to the government in the administrative audit and investigation did not constitute a public disclosure that would trigger the public-disclosure bar.

Alternatively, Erlanger maintains that there was a prior public disclosure of fraud in the administrative audit and investigation to others outside the government who were "strangers to the fraud." *United States ex rel. Doe v. John Doe Corp.*, 960 F.2d 318, 323 (2d Cir. 1992) (finding innocent employees were "strangers to the fraud"); *but see Schumer*, 63 F.3d at 1518-19 (declining to adopt *Doe*). In *Doe*, an investigator divulged allegations of fraud to the defendant's employees while a search warrant was being executed. 960 F.2d at 322. The court found that many of the employees were "strangers to the fraud" who knew nothing about the scheme, were not targets or potential witnesses, and were under no obligation to keep the information confidential when they learned of the fraud. *Id*. at 322-23. Erlanger points specifically to disclosures between OIG and AdvanceMed and between Erlanger and the Deloitte auditors. Neither constituted a public disclosure of fraud that would trigger the public-disclosure bar.

With respect to AdvanceMed, the district court relied on two disclosures in the administrative audit or investigation of information that revealed the same kind of fraud alleged by Whipple: (1) when the OIG referred the anonymous complaint for review by AdvanceMed; and (2) when the OIG referred the matter for administrative resolution by AdvanceMed. Although AdvanceMed is a private corporation, there is no question that AdvanceMed received the information in question in its capacity as the Medicare Part A Program Safeguard Contractor for Tennessee, and for the purpose of acting on behalf of the government as part of the administrative audit and investigation. Further, these disclosures were confidential and remained so until after this action was filed.

Having concluded that some disclosure outside the government is required, there is no basis to conclude that these disclosures to AdvanceMed were "public." *See Maxwell*, 540 F.3d at 1184-86 (holding communication between federal and state officials in an active investigation under a duty of confidentiality with respect to that information is not a public disclosure insofar as the information is not released into the public domain); *United States ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1521 n.4 (10th Cir. 1996) (holding disclosure among government employees does not constitute public disclosure). Indeed, the Ninth Circuit has held in an analogous situation that the government's dissemination of an audit report to a private company hired by the government to audit the contract was not a public disclosure for purposes of § 3730(e)(4). *See Berg v. Honeywell Int'l, Inc.*, 502 F. App'x 674, 676 (9th Cir. 2012). Distinguishing an earlier case in which the government disclosed information to an "outsider" to the investigation, the court held that the government contractor "was not an 'outsider' to the investigation, but rather was acting on behalf of the government and had an incentive to keep confidential the information learned during its audit." *Id*.

Finally, we accept, as the district court did, the evidence that, with the approval of the OIG's Office, Erlanger engaged Deloitte to assist in its investigation of the issues concerning the inpatient billing raised by AdvanceMed. In particular, an internal OIG investigative report and the letter from Erlanger's counsel to the OCIG's Office summarizing the investigation and results of Erlanger's internal review both indicated that Erlanger provided seven Deloitte auditors with specific information concerning the issues raised by the OIG's Office of Investigations. Why, however, disclosure of that information to the Deloitte auditors should constitute a "public disclosure" is not clear.

Erlanger asserts that the Deloitte auditors were "strangers to the fraud." It is true that, like the "innocent employees" in *Doe*, the auditors were not alleged to have participated in the fraudulent billing, and were not potential witnesses. However, it cannot be said that they were under no obligation to keep the information confidential. Deloitte was engaged to assist Erlanger in responding to the government's audit and investigation, and the information was disclosed by Erlanger in order for Deloitte to evaluate the billing issues raised and conduct a broader independent audit to determine the scope of those issues. The results of Erlanger's internal

investigation, including Deloitte's findings, were presented to the government. The disclosure of the information by Erlanger to the Deloitte auditors in the course of their work did not release the information into the public domain, and was more akin to the "private" disclosure to the defendant's employees in *Schumer*. Further, to the extent that the disclosures are considered to have been made through the government's audit and investigation, the Deloitte auditors cannot be said to have been "outsiders" to that investigation. *See Seal I v. Seal A*, 255 F.3d 1154, 1161-62 (9th Cir. 2001); *cf. United States ex rel. Aflatooni v. Kitsap Physicians Servs.*, 163 F.3d 516, 523-24 (9th Cir. 1999) (holding disclosures in internal corporate investigation were not made in an administrative audit and investigation under § 3730(e)(4)).

Accordingly, the district court's dismissal of Whipple's short-stay, same-day-surgery, and renal-dialysis claims as barred under § 3730(e)(4) is **REVERSED** and the matter is **REMANDED** for further proceedings consistent with this opinion.