# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued May 7, 2014          Decided August 26, 2014

No. 13-7105

UNITED STATES OF AMERICA, EX REL. ANTHONY OLIVER,
APPELLANT

v.

PHILIP MORRIS USA INC., A VIRGINIA CORPORATION
FORMERLY KNOWN AS PHILIP MORRIS, INC.,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cv-00034)

*David S. Golub* argued the cause for appellant. With him
on the briefs were *Carl S. Kravitz* and *Jason M. Knott*.

*Elizabeth P. Papez* argued the cause for appellee. With
her on the brief were *Eric M. Goldstein*, *Eric T. Werlinger*,
and *Thomas J. Frederick*.

Before: TATEL, GRIFFITH and PILLARD, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* PILLARD.

PILLARD, *Circuit Judge*: Anthony Oliver, President and CEO of a tobacco company called Medallion Brands International Co., brought this *qui tam* action against Philip Morris USA Inc., alleging that Philip Morris violated the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733 (2006). Oliver alleges that Philip Morris was required to provide the government with "Most Favored Customer" pricing, but failed to do so, instead selling its product for less to affiliates operating in the same markets as government purchasers even as it fraudulently affirmed to the government that its price was the lowest. The district court concluded that it lacked subject matter jurisdiction due to the FCA's "public disclosure bar," because Oliver's suit was based on transactions that had been publicly disclosed. We disagree. Neither the contract term obligating Philip Morris to provide the government with Most Favored Customer pricing nor Philip Morris's fraudulent certifications that it complied was publicly disclosed. Accordingly, we vacate the district court's decision and remand this case for further proceedings.

**I.**

The Navy Exchange Service Command ("NEXCOM") and the Army and Air Force Exchange Service ("AAFES") (collectively, the "Exchanges") operate facilities that provide goods and services to customers in the military community.[1] The Exchanges enter into contracts with vendors that contain Most Favored Customer provisions. Pursuant to those government contracts, vendors must certify to the Exchanges that the prices, terms, and conditions they offer the Exchanges are comparable to or more favorable than the prices the

---

[1] Because we are reviewing the grant of a motion to dismiss, we accept Oliver's allegations, and draw all reasonable inferences in his favor. *United States ex rel. Davis v. District of Columbia*, 679 F.3d 832, 834-35 (D.C. Cir. 2012).

vendors charge their other customers. Defendant Philip Morris has, since at least 2002, entered into contracts with and sold cigarettes to the Exchanges. Oliver estimates that, in a single year, the Exchanges purchased approximately 1.8 million cartons of Marlboro cigarettes from Philip Morris at improperly inflated prices. Philip Morris's contract obligated it to comply with the Most Favored Customer provisions and to certify its compliance.

Oliver filed this *qui tam* action in 2008, alleging that Philip Morris violated the False Claims Act.[2] According to the complaint, Philip Morris sold cigarettes to its affiliates at lower prices than it charged the Exchanges for identical cigarettes, and those affiliates resold the cigarettes at prices that undercut the Exchanges' pricing. Oliver says such sales violated the Most Favored Customer provisions even as Philip Morris continued to certify that it was providing the Exchanges with the best price for its cigarettes, in contravention of the FCA.

The FCA creates civil liability for persons who present false and fraudulent claims for payment to the government or who use a false statement to get a false or fraudulent claim paid by the government. 31 U.S.C. § 3729(a)(1)-(2). The FCA authorizes the government to recover a statutory penalty for each violation, as well as treble the amount of damages it actually sustains. *Id.* § 3729(a). The FCA also authorizes *qui*

---

[2] The False Claims Act was amended on March 23, 2010 by the Patient Protection and Affordable Care Act. Pub. L. No. 111-148, § 10104(j)(2), 124 Stat. 119, 901-902 (2010). Those amendments do not apply to pending suits filed before their enactment. *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 283 n.1 (2010). Accordingly, throughout this opinion we refer to the version of the FCA that was in effect at the time Oliver filed his complaint.

*tam* actions, whereby private individuals, called "relators," bring actions in the government's name; the Act establishes incentives for such private suits by allowing successful relators to share in the government's recovery. *Id.* § 3730(b)(1), (d).

The FCA encourages insiders to expose fraudulent conduct, but does not reward relators who seek to profit by bringing suits to complain of fraud that has already been publicly exposed. *See, e.g.*, *Graham Cnty. Soil & Water Conservation Dist. v. United States el rel. Wilson*, 559 U.S. 280, 294-95 (2010); *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 649-51 (D.C. Cir. 1994). To that end, the FCA contains a public disclosure bar that limits the ability of a private party to bring a *qui tam* suit where the fraud is already publicly known. That bar prevents parasitic lawsuits brought by opportunistic litigants seeking to capitalize on public disclosures. The version of the statutory public disclosure bar applicable to this suit divests courts of subject matter jurisdiction over an action "based upon the public disclosure of allegations or transactions" made in specified types of fora, "unless the action is brought by the Attorney General or the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(A).[3]

---

[3] A person who is an original source of the information may sue as a *qui tam* relator under the FCA even to recover for fraud that has been publicly disclosed. An "original source" is someone who "has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action." 31 U.S.C. § 3730(e)(4)(B). The district court concluded that Oliver had failed to demonstrate he was an "original source" of the information on which his allegations were based. *United States ex rel. Oliver v.*

The district court granted Philip Morris's motion to dismiss Oliver's claim on the ground that the allegedly fraudulent transactions his complaint identifies had already been publicly disclosed. *United States ex rel. Oliver v. Philip Morris USA Inc.*, 949 F. Supp. 2d 238, 240, 244-49 (D.D.C. 2013). The court concluded that a Philip Morris memorandum, referred to in the litigation as the "Iceland Memo," disclosed Philip Morris's affiliates' practice of selling cigarettes on the duty-free market at prices lower than those it charged the Exchanges, as well as the fact that the Exchanges had objected to the pricing differential. *Id.* at 248.

The Iceland Memo is a Philip Morris inter-office transmittal sheet dated December 28, 1999, relating to a letter (not included in the record) that the director of Morale, Welfare & Recreation ("MWR") at a United States naval station in Iceland apparently wrote to a duty-free wholesaler of Philip Morris cigarettes as part of MWR's unsuccessful efforts to buy cheaper Philip Morris cigarettes from the duty-free source. J.A. 71. The Memo recounts that a Philip Morris sales representative intervened and advised the wholesaler not to ship cigarettes to the MWR facility. *See id.* The Memo states, in relevant part:

> P[hilip] M[orris] USA is responsible for U.S. Military markets worldwide and is the source for product to MWR facilities . . . . P[hilip] M[orris] I[nternational] Duty-Free list prices are lower than P[hilip] M[orris]

---

*Philip Morris USA Inc.*, 949 F. Supp. 2d 238, 249-51 (D.D.C. 2013). Because we conclude that the information supporting Oliver's claim had not been publicly disclosed, we do not reach the question whether Oliver was an "original source." *See Springfield Terminal*, 14 F.3d at 651; *see also United States ex rel. Holmes v. Consumer Ins. Grp.*, 318 F.3d 1199, 1203 (10th Cir. 2003).

USA Military tax-free prices and we frequently receive inquir[i]es from the Service Headquarters on why they can't purchase tax-free product at these lower prices. Our response is that P[hilip] M[orris] USA is the U.S. Federal Government's source of product, and we ensure that the product conforms to the proper Surgeon General warnings.

*Id.* The bottom of the Memo contains a handwritten note stating that "this issue was resolved," but does not specify how. *Id.*

The district court acknowledged that the Iceland Memo did not explain that the pricing differential was contrary to the Most Favored Customer provisions. *Id.* at 248-49. Nevertheless, that court concluded that those provisions, too, were publicly disclosed because they were "legal requirements that the [g]overnment is presumed to know." *Id.* at 249 (citing *Schindler Elevator Corp. v. United States ex rel. Kirk*, 131 S. Ct. 1885, 1890 (2011)). The court further concluded that Philip Morris's certification of compliance with the Most Favored Customer provisions could be inferred from the fact that the Exchanges continued to purchase cigarettes from Philip Morris. *Id.* at 249. Because the FCA framed the public disclosure bar as jurisdictional, the dismissal was for want of subject matter jurisdiction over Oliver's action. *Id.* at 240.

## II.

Oliver timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1291. We review de novo the district court's dismissal for lack of subject matter jurisdiction. *Fisher-Cal Indus., Inc. v. United States*, 747 F.3d 899, 902 (D.C. Cir. 2014).

The False Claims Act's public disclosure bar states that a court lacks subject matter jurisdiction over an action "based upon the public disclosure of allegations or transactions." 31 U.S.C. § 3730(e)(4)(A). As we explained in *Springfield Terminal*, the word "transactions" refers to two or more elements that, when considered together, give rise to an inference that fraud has taken place. *See* 14 F.3d at 654. As this court elaborated in a much-quoted formulation:

> [I]f X + Y = Z, Z represents the *allegation* of fraud and X and Y represent its essential elements. In order to disclose the fraudulent *transaction* publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, *i.e.*, the conclusion that fraud has been committed. The language employed in § 3730(e)(4)(A) suggests that Congress sought to prohibit *qui tam* actions *only* when either the allegation of fraud [Z] or the critical elements of the fraudulent transaction themselves [X and Y] were in the public domain.

*Id.* Thus, "where only one element of the fraudulent transaction is in the public domain (*e.g.*, X), the *qui tam* plaintiff may mount a case by coming forward with either the additional elements necessary to state a case of fraud (*e.g.*, Y) *or* allegations of fraud itself (*e.g.*, Z)." *Id.* at 655.

## III.

We begin by restating Oliver's allegations using the *Springfield Terminal* formulation: the fact that Philip Morris was not providing the Exchanges with the best price for cigarettes (X) plus the fact that Philip Morris falsely certified that it complied with the Most Favored Customer provisions (Y) gives rise to the conclusion Philip Morris committed fraud (Z). The court lacks jurisdiction over Oliver's suit only

if X *and* Y, i.e., *both* the pricing disparities *and* Philip Morris's false certifications of compliance with the Most Favored Customer provisions, were in the public domain.[4]

We need not resolve whether the pricing disparities were publicly disclosed in the Iceland Memo, because we conclude that the "Y" of Oliver's suit was not publicly disclosed. Philip Morris has made no attempt to show that its allegedly false certifications of compliance with the Most Favored Customer provisions were in the public domain. Instead, both Philip Morris and the district court focused on the public disclosure of the Most Favored Customer provisions. *See Oliver*, 949 F. Supp. 2d at 249. The district court concluded that if the Most Favored Customer provisions were publicly disclosed, Philip Morris's certifications could be inferred from the fact that the Exchanges continued to purchase Philip Morris cigarettes. *Id.* Even assuming *arguendo* that the certifications could be inferred from the disclosure of the Most Favored Customer provisions, Oliver's suit is not barred

---

[4] The parties do not argue that the Iceland Memo itself contains direct "allegations" of fraud (Z). For a disclosure to constitute an "allegation" it must contain an explicit assertion that fraud as such has taken place. *See Springfield Terminal*, 14 F.3d at 654. As Oliver points out, Philip Morris did not contend below, and the district court did not find, "that the Iceland Memo contained a conclusory assertion sufficient to constitute an 'allegation' under the FCA." Appellant Br. 22. In other words, the Iceland Memo did not announce the fraud in the form of Z, as opposed to X + Y. *See Oliver*, 949 F. Supp. 2d at 249 ("[T]he Court finds that Oliver's Complaint describes '*transactions*' 'substantially similar to those in the public domain' and therefore is 'based upon' the public disclosure of those *transactions* within the meaning of section 3730(e)(4)(A)." (emphasis added)). Nor does Philip Morris attempt to argue on appeal that explicit allegations of fraud as such were publicly disclosed. *See* Oral Arg. Tr. 12:22-14:9, 28:19-29:4; *see also* Appellee Br. 20, 32-33.

because the Most Favored Customer provisions were not publicly disclosed.

Philip Morris makes three alternative arguments that the Most Favored Customer provisions were publicly disclosed. First, Philip Morris encourages us to affirm the district court's conclusion that the Most Favored Customer provisions were in the public domain because they were "legal requirements that the [g]overnment is presumed to know." *Id.* Second, according to Philip Morris, the Iceland Memo not only publicly disclosed the pricing disparities, but also that the government was complaining about those disparities, which was adequate to alert government authorities of the likelihood of fraud. Finally, after oral argument, Philip Morris urged us to rely on new evidence that the Most Favored Customer provisions were publicly available. We consider each argument in turn.

**A.**

Both the plain language and history of the FCA demonstrate, contrary to Philip Morris's contention, that the government's awareness of the Most Favored Customer requirements does not amount to their public disclosure. We believe that "a 'public disclosure' requires that there be some act of disclosure to the public outside of the government. The mere fact that the disclosures are contained in government files someplace, or even that the government is conducting an investigation behind the scenes, does not itself constitute public disclosure." *United States ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720, 728 (1st Cir. 2007), *overruled on other grounds by Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662 (2008).

The plain text of the public disclosure bar delineates three channels through which information can be made public for

purposes of invoking the bar. To count as "public," a disclosure must be made either: "[1] in a criminal, civil, or administrative hearing, [2] in a congressional, administrative, or [General] Accounting Office report, hearing, audit, or investigation, or [3] from the news media." 31 U.S.C. § 3730(e)(4)(A). "[T]he FCA's public disclosure bar . . . deprives courts of jurisdiction over *qui tam* suits when the relevant information has already entered the public domain *through certain channels*." *Graham Cnty.*, 559 U.S. at 285 (emphasis added). By its express terms, the public disclosure bar only applies when allegations or transactions have been made public through one of those channels. *See United States ex rel. Williams v. NEC Corp.*, 931 F.2d 1493, 1499 (11th Cir. 1991). The government's own, internal awareness of the information is not one such channel. *See* 31 U.S.C. § 3730(e)(4)(A); *see also United States ex rel. Meyer v. Horizon Health Corp.*, 565 F.3d 1195, 1200 n.3 (9th Cir. 2009) (collecting cases holding that disclosure to the government, without more, is not a public disclosure for purposes of the public disclosure bar).

The history of the FCA strongly bolsters this conclusion. Congress revised the FCA in 1986 to remove a jurisdictional bar that previously applied when the government had knowledge of the facts underlying a relator's suit. Before the amendment, the FCA precluded *qui tam* actions based on "evidence or information in the possession of the United States . . . at the time such suit was brought." *Schindler Elevator Corp. v. United States ex rel. Kirk*, 131 S. Ct. 1885, 1894 (2011) (internal quotation marks omitted). The 1986 amendment replaced that "government knowledge" bar with the version of the public disclosure bar applicable to Oliver's lawsuit. *See id.* As a result of that change, the inquiry shifted from whether the relevant information was known to the government to whether that information was publicly

disclosed in one of the channels specified by the statute. *See Graham Cnty.*, 559 U.S. at 300 ("The statutory touchstone . . . is whether the allegations of fraud have been 'publicly disclosed,' not whether they have landed on the desk of a DOJ lawyer." (citation and internal brackets omitted)). The statutory amendment makes clear that the government's knowledge of its own legal requirements is not a public disclosure. *See, e.g.*, *Rost*, 507 F.3d at 729-30. A contrary interpretation would essentially reinstate a jurisdictional bar Congress expressly eliminated.

According to Philip Morris, the Supreme Court's decision in *Schindler* supports its contention that the public disclosure bar can be applied when innocuous-seeming facts are publicly disclosed and the government has knowledge of a non-public federal legal requirement that renders them fraudulent. Philip Morris relies on the Court's statement that it concluded that FOIA requests were reports for purposes of the public disclosure bar, in part because under a contrary interpretation "anyone could identify a few regulatory filing and certification requirements, submit FOIA requests until he discovers a federal contractor who is out of compliance, and potentially reap a windfall in a *qui tam* action under the FCA." *Schindler*, 131 S. Ct. at 1894. But Philip Morris's reliance on *Schindler* is misplaced. In *Schindler*, the Court held that a federal agency's responses to FOIA requests were "reports" for purposes of the public disclosure bar, because an agency's written response together with attached records sought in the FOIA request falls within the ordinary understanding of the statutory term "administrative . . . report." *Id.* at 1893. Nothing in *Schindler* supports Philip Morris's suggestion that suits should be barred any time the government is aware of a legal requirement. The government's awareness of the Most Favored Customer

provisions at issue in this case does not justify the imposition of the public disclosure bar.

**B.**

We next conclude, contrary to Philip Morris's contentions, that the Iceland Memo did not publicly disclose the requirements of the Most Favored Customer provisions. The Iceland Memo, standing alone, does not communicate that there was anything legally impermissible about the prices Philip Morris was charging the Exchanges. *See* J.A. 71. That memo makes no mention of the Most Favored Customer clauses, nor does it discuss more generally Philip Morris's obligation to charge the Exchanges its lowest price for cigarettes. *Id.*

Philip Morris contends that the Iceland Memo makes clear that the Exchanges were frequently complaining about their apparent overpayments, and that those protestations support an inference that Philip Morris was fraudulently charging the Exchanges higher prices than other customers in violation of its contractual undertaking to the contrary. The Memo, however, nowhere states that the Exchanges complained; rather, it merely reports that Philip Morris "frequently receive[d] inquir[i]es" from the Exchanges about why they could not purchase cigarettes at the lower prices offered by duty-free wholesalers instead of buying them from Philip Morris under their contracts. J.A. 71. The mere fact that the Exchanges inquired, or even complained, about pricing does not amount to public disclosure of facts supporting the elements of a claim of fraud. It is reasonable for a purchaser to object to buying at a price that is higher than the best price not only when the pricing is fraudulent or otherwise unlawful, but also when the purchaser simply wants to ensure it receives the most competitive deal. Contrary to

Philip Morris's assertions, the Iceland Memo did not publicly disclose the allegedly fraudulent aspect of the prices Philip Morris charged the Exchanges.

## C.

Finally, we reject Philip Morris's belated efforts to resurrect arguments it abandoned on appeal. Before the district court, Philip Morris argued that the Most Favored Customer provisions were available to the broader public and thus helped to bring the transaction on which Oliver's claim is based under the public disclosure bar. *See Oliver*, 949 F. Supp. 2d at 249 n.8. The district court expressly rejected that argument because Philip Morris failed to show the timing of the putative internet publication of the Most Favored Customer clause that Philip Morris submitted and, in particular, that it was publicly available before 2008, when Oliver filed his suit. *Id.* Philip Morris did not follow up by seeking to provide to the district court evidence to pin down the publication date, nor did it raise on appeal any argument based on internet publication of the clause. After oral argument, however, Philip Morris submitted to us a letter proffering new evidence purporting to show that the Most Favored Customer provisions were publicly available on the Exchanges' websites before 2008.

We typically do not consider new evidence on appeal. *See, e.g.*, *United States ex rel. Davis v. District of Columbia*, 679 F.3d 832, 837 n.3 (D.C. Cir. 2012); *see also Williams v. Romarm, SA*, --- F.3d ---, No. 13-7022, 2014 WL 2933222, at *7 (D.C. Cir. July 1, 2014) ("[T]he 28(j) process should not be employed as a second opportunity to brief an issue not raised in the initial briefs. The letters are more appropriately used to cite new authorities released after briefing is complete or after argument but before issuance of the court's

opinion."). Even though legal arguments going to our subject matter jurisdiction are not subject to waiver, we have held that we will not consider jurisdictional facts that were not timely presented concerning jurisdiction over an FCA claim. *See United States ex rel. Settlemire v. District of Columbia*, 198 F.3d 913, 920 (D.C. Cir. 1999). We see no reason here to depart from our regular practice. Philip Morris has provided no explanation for its failure to timely present its new evidence to the district court, nor for its delay in providing that evidence to us. We are, in any event, in no position to assess on appeal its authenticity or its bearing on the issue for which it was submitted. As we have explained:

> [A]n appellate court ordinarily has no factfinding function. It cannot receive new evidence from the parties, determine where the truth actually lies, and base its decision on that determination. Factfinding and the creation of a record are the functions of the district court; therefore, the consideration of newly-discovered evidence is a matter for the district court. The proper procedure for dealing with newly discovered evidence is for the party to move for relief from the judgment in the district court under rule 60(b) of the Federal Rules of Civil Procedure.

*Nat'l Anti-Hunger Coal. v. Exec. Comm. of President's Private Sector Survey on Cost Control*, 711 F.2d 1071, 1075 (D.C. Cir. 1983) (internal quotation marks omitted). Thus, we decline to make an exception here and do not consider Philip Morris's new evidence.

## IV.

We decline Philip Morris's invitation to affirm the district court's decision on the alternative ground that Oliver's complaint fails to state a claim for which relief can be

granted.  The district court did not evaluate whether Oliver had stated a claim; we remand for the district court to consider that question in the first instance.  *See, e.g.*, *Singleton v. Wulff*, 428 U.S. 106, 120 (1976).

\* \* \*

For the foregoing reasons, the district court's order dismissing the complaint for lack of jurisdiction is vacated and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*