**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 13-2345**

─────────────

UNITED STATES OF AMERICA ex rel. KAREN T. WILSON,

        Plaintiff - Appellant,

        v.

GRAHAM COUNTY SOIL & WATER CONSERVATION DISTRICT; CHEROKEE COUNTY SOIL & WATER CONSERVATION DISTRICT; RICHARD GREENE, in his individual capacity; WILLIAM TIMPSON, in his individual capacity; KEITH ORR, in his individual and official capacities; RAYMOND WILLIAMS, in his individual capacity; DALE WIGGINS, in his individual capacity; GERALD PHILLIPS, in his individual capacity; ALLEN DEHART, in his individual capacity; LLOYD MILLSAPS, in his official capacity; BILLY BROWN, in his individual capacity; LYNN CODY, in his individual capacity; BILL TIPTON, in his official capacity; C. B. NEWTON, in his individual capacity; EDDIE WOOD, in his individual capacity; GRAHAM COUNTY,

        Defendants - Appellees,

        and

GRAHAM COUNTY BOARD OF COUNTY COMMISSIONERS; CHEROKEE COUNTY BOARD OF COUNTY COMMISSIONERS; CHERIE GREENE; RICKY STILES; BETTY JEAN ORR; JOYCE LANE; JIMMY ORR; JERRY WILLIAMS, in his individual capacity; EUGENE MORROW; CHARLES LANE; CHARLES LANEY; GEORGE POSTELL; LLOYD KISSLEBURG; TED ORR; BERNICE ORR; JOHN DOE, JR.; JOHN DOE CORPORATION; GOVERNMENTAL ENTITIES, 1-99,

        Defendants.

─────────────

Appeal from the United States District Court for the Western District of North Carolina, at Bryson City.  Martin K. Reidinger, District Judge. (2:01-cv-00019-MR)

Argued: December 9, 2014          Decided: February 3, 2015

Before MOTZ and KING, Circuit Judges, and Arenda L. Wright ALLEN, United States District Judge for the Eastern District of Virginia, sitting by designation.

Reversed by published opinion. Judge Motz wrote the opinion, in which Judge King and Judge Allen joined.

Mark Tucker Hurt, Abingdon, Virginia, for Appellant. Sean Francis Perrin, WOMBLE CARLYLE SANDRIDGE & RICE, PLLC, Charlotte, North Carolina, for Appellees Raymond Williams, Dale Wiggins, Lynn Cody, and Graham County. Martin McCracken, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees Graham County Soil & Water Conservation District, Cherokee County Soil & Water Conservation District, Gerald Phillips, Allen Dehart, Lloyd Millsaps, Bill Tipton, C.B. Newton, and Eddie Wood.

DIANA GRIBBON MOTZ, Circuit Judge:

A long and winding road has brought this False Claims Act (FCA) case to us on appeal a third time. After two trips to the Supreme Court, Relator Karen Wilson now appeals the district court's dismissal of her qui tam action for lack of jurisdiction pursuant to the FCA's public disclosure bar. For the reasons that follow, we reverse.

## I.

We need only briefly recount the factual and procedural history. Fuller accounts of each can be found in Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson, 559 U.S. 280 (2010), and United States ex rel. Wilson v. Graham Cnty. Soil & Water Conservation Dist., 528 F.3d 292 (4th Cir. 2008).

When a February 1995 storm caused significant flooding and erosion in parts of western North Carolina, the United States Department of Agriculture (USDA) agreed to help the affected counties cover the costs of cleanup and recovery through the Emergency Watershed Protection Program ("EWP Program"). See generally 7 C.F.R. §§ 624.1–624.11. Jointly administered by the National Resources Conservation Service (NRCS) and the United States Forest Service, the EWP Program provides financial assistance to eligible states and political subdivisions "to

3

relieve imminent hazards . . . created by a natural disaster that causes a sudden impairment of a watershed." Id. § 624.2.

North Carolina's Graham and Cherokee Counties applied for storm relief under the EWP Program and each was deemed eligible to receive federal funding. As required, each county entered into a "Cooperative Agreement" with NRCS, see id. § 624.8(c), agreeing to perform or contract out the necessary recovery work. NRCS then agreed to reimburse the counties for most of the total cost. In each county, responsibility for the EWP Program fell to the respective Soil and Water Conservation District (SWCD), a local special-purpose government entity. Both the Graham County SWCD and the Cherokee County SWCD hired independent contractors to complete the required cleanup and remediation.

Appellant, Relator Karen Wilson, worked at the Graham County SWCD as a part-time secretary from 1993 until 1997. Soon after Graham County received approval for the EWP Program, Wilson began to suspect fraud in its implementation, not only by her colleagues at the SWCD, but also by NRCS officials who oversaw the Program. In December 1995, Wilson wrote a letter to USDA Special Agent Richard Gallo outlining her concerns. According to Wilson's letter, two NRCS employees, H. Richard Greene and William Timpson, had agreed with the independent contractors to front the cost of supplies in exchange for a share of the ultimate profits. Wilson's letter also indicated

4

that the Graham County SWCD had chosen as its "independent" contractor Keith Orr, who was a salaried SWCD employee and so ineligible to work on the contract. In addition, Wilson told Gallo, the Graham County SWCD was at that time "being audited by county auditors."

Four months later, in April 1996, those auditors formalized their findings in an "Agreed Upon Procedures Report" ("the Audit Report") detailing several problems with the Graham County SWCD's handling of the EWP program. The Audit Report characterized Orr's hiring as a likely "violation of the County's code of conduct," and pointed to a lack of proper documentation surrounding both the bidding and the invoicing of the EWP contracts. An accompanying cover letter indicated that Graham County received four copies of the Audit Report, two for the County's own records, and one each "for the Graham County Soil & Water Conservation District and . . . the US Department of Agriculture, should you be required to distribute copies to them." In the cover letter, the independent accounting firm responsible for the Audit Report also reported sending one copy to the North Carolina Local Government Commission and one to the North Carolina Division of Soil and Water Conservation.

The Audit Report failed to put an end to Wilson's suspicions. In November 1996, she made a written statement to another USDA Special Agent, A. Kenneth Golec, not only

5

reiterating and expanding on some of her earlier allegations, but also raising new ones -- notably that Richard Greene had stolen logs intended for use in the rebuilding efforts. The allegations against Greene proved well-founded. In August 1997, Special Agent Golec completed a Report of Investigation ("USDA Report") that concluded Greene had "received payment by checks issued in his name from a lumber mill for the delivery of trees removed from the Emergency Watershed Program (EWP), sites he represented." The cover page of the USDA Report included a distribution list to certain state and federal law enforcement agencies and a warning that it was "not to be distributed outside your agency . . . without prior clearance from the Office of Inspector General, USDA."

In 2001, Wilson filed suit under the FCA's qui tam provision, alleging that fraudulent invoices were submitted to the federal government under the EWP Program in both Graham and Cherokee Counties. In 2006, Wilson filed her third amended complaint -- the operative pleading for this appeal -- in which she named as defendants Graham County, the Graham County SWCD, and the Cherokee County SWCD, along with several individuals, including Orr, Greene, and Timpson. Although the intervening years, and decisions of both this court and the Supreme Court, have eliminated several of Wilson's claims for relief, her core FCA claims pertaining to the EWP Program in both counties

6

survived until the district court dismissed them in the order from which Wilson now appeals.

## II.

In its _qui tam_ provision, the False Claims Act permits private citizens (known as relators) to bring suit on behalf of the United States "to recover from those persons who make false or fraudulent claims for payment to the United States." Graham Cnty., 559 U.S. at 283 (citing 31 U.S.C. §§ 3279-3733 (2006)).

The statute's earlier version, which applies to this appeal, contains a jurisdiction-stripping provision:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions . . . in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation . . . unless the action is brought by the Attorney General or the person bringing the action is an original source.

31 U.S.C. § 3730(e)(4)(A) (2006). This provision, known as the public disclosure bar, is designed to strike a balance between empowering the public to expose fraud on the one hand, and "preventing 'parasitic' actions" on the other. United States ex rel. Siller v. Becton Dickinson & Co., 21 F.3d 1339, 1348 (4th Cir. 1994) (citation omitted). In short, it mandates the dismissal of claims brought by a relator if those claims are

7

based on a public disclosure, unless the relator qualifies as an original source.[1]

We asked the district court on remand to make the factual findings necessary to apply this statutory scheme. Pursuant to this directive, the court considered (1) whether any relevant audits, reports, hearings, or investigations had been publicly disclosed; (2) whether Wilson based her claims on any such public disclosures; and (3) if so, whether Wilson was nonetheless an original source of those claims. See United States ex rel. Wilson v. Graham Cnty. Soil & Water Conservation Dist., 976 F. Supp. 2d 755, 760 (W.D.N.C. 2013), on remand from 399 F. App'x 774 (4th Cir. 2010). Reaching all three questions, the court concluded that both the Audit Report and the USDA Report had been publicly disclosed, that Wilson based her claims on these reports, and that she was not an original source of any of those claims. Id. at 770, 772-73, 776. The district court therefore dismissed Wilson's action in its entirety, holding

_____

[1] The Patient Protection and Affordable Care Act ("PPACA"), enacted in 2010, amended this provision slightly. See Pub. L. 111-148, 124 Stat. 119 § 10104(j)(2). Rather than depriving a court of jurisdiction over actions based on public disclosures, the statute now provides only that "[t]he court shall dismiss [such] an action or claim." 31 U.S.C. § 3730(e)(4)(A). The PPACA, however, is not retroactive. Graham Cnty., 559 U.S. at 283 n.1. We thus apply the statute's earlier version to this appeal, a fact that renders the public-disclosure question one of subject-matter jurisdiction. As is customary, we use the present tense when discussing the operative version of the statute.

that the public disclosure bar deprived it of subject-matter jurisdiction. Id. at 776.

Wilson timely noted this appeal. Our review of a district court's "jurisdictional findings" is "deferential." United States ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 350 (4th Cir. 2009). When a finding of fact undergirds the district court's conclusion with respect to jurisdiction, we leave it undisturbed unless it is clearly erroneous. Id. at 348. The "legal conclusions flowing therefrom," however, are reviewed de novo. Id.

III.

To sustain the district court's holding, we must find that the court correctly concluded that (1) all relevant reports had been publicly disclosed, and (2) Wilson based her claims on those public disclosures, and (3) Wilson was not the original source of her claims. With respect to the first requirement -- public disclosure -- the court concluded that the Audit Report and the USDA Report, both of which contained allegations of fraud, constituted public disclosures of relevant reports because they had been distributed to public officials responsible for managing the subject forming the basis of the claims. Graham Cnty., 976 F. Supp. 2d at 770. The distribution to these officials amounted to a public disclosure under the

9

FCA, the court reasoned, because it put the government on notice of the possible fraud. Id. Though we find no fault with the district court's factual findings, the court applied an incorrect legal standard in reaching its conclusion as to public disclosure. Because the district court erred with respect to this first issue, we must reverse.

A.

The FCA withdraws federal jurisdiction over qui tam actions "based upon the public disclosure of allegations or transactions" in an "audit" or "investigation." 31 U.S.C. § 3730(e)(4)(A) (2006). Since the Audit Report and the USDA Report clearly qualify as eligible sources under controlling law,[2] the sole question at issue is whether the reports were "publicly disclosed" prior to the time Wilson filed this action.

The plain meaning of the phrase "public disclosure" suggests that they were not. "Disclosure" requires an affirmative act. See Webster's Third New International Dictionary 645 (1993) (defining "disclose" as "to open up to general knowledge," "to expose to view," and "to make known").

_____

[2] Under the current iteration of the FCA, amended by the PPACA, the Audit Report would not qualify as a "public disclosure" because it is not a "Federal . . . audit." 31 U.S.C. § 3730(e)(4)(A)(ii) (emphasis added). The version of the statute controlling this appeal, however, contains no such modifier and has been held to encompass state and local materials as well as federal ones. See Graham Cnty., 559 U.S. at 283.

Such an act, in turn, requires a recipient -- a person, group, or entity to whom the information is revealed. By specifying that a "disclosure" must be "public," Congress indicated that only disclosures made to the public at large or to the public domain had jurisdictional significance. Neither the Audit Report nor the USDA Report was distributed to, or intended to be distributed to, the public. Indeed, the authors of both reports attached to them distribution lists, limiting distribution to government entities. And nothing in the record suggests that either report made it further than its limited intended audience until Wilson filed suit.

In holding to the contrary -- that the reports were publicly disclosed -- the district court quoted and almost exclusively relied on a Seventh Circuit case, United States v. Bank of Farmington, 166 F.3d 853 (7th Cir. 1999), overruled on other grounds by Glaser v. Wound Care Consultants, Inc., 570 F.3d 907 (7th Cir. 2009). There the court held that information on which the relator based her qui tam action had been "publicly disclosed" because it had been disclosed "to a competent public official." Id. at 861. Reasoning that "'public' . . . can also be defined as 'authorized by, acting for, or representing the community,'" the Bank of Farmington court held that a disclosure, "not actually made to the public at large," but rather to a "public official," sufficed to trigger the

11

jurisdictional bar in § 3730(e)(4)(A).  Id. (quoting 12 Oxford English Dictionary 779 (2d ed. 1989)).  Here, the district court similarly held that because the distribution lists accompanying the Audit Report and the USDA Report included federal agencies with relevant oversight, the reports had been publicly disclosed.

No other circuit, however, has adopted the Seventh Circuit's interpretation of the public disclosure requirement. Rather, the other five circuits to consider the question have rejected the Seventh Circuit's approach.  See United States ex rel. Oliver v. Philip Morris USA, Inc., 763 F.3d 36, 42 (D.C. Cir. 2014); United States ex rel. Meyer v. Horizon Health Corp., 565 F.3d 1195, 1200 & n.3 (9th Cir. 2009); United States ex rel. Rost v. Pfizer, Inc., 507 F.3d 720, 730 (1st Cir. 2007), overruled on other grounds by Allison Engine Co. v. United States ex rel. Sanders, 553 U.S. 662 (2008); Kennard v. Comstock Res., Inc., 363 F.3d 1039, 1043 (10th Cir. 2004); United States ex rel. Williams v. NEC Corp., 931 F.2d 1493, 1499-1500 (11th Cir. 1991); see also United States ex rel. Beauchamp v. Academi Training Ctr., Inc., 933 F. Supp. 2d 825, 844 (E.D. Va. 2013); United States v. Smith & Nephew, Inc., 749 F. Supp. 2d 773, 782-84 (W.D. Tenn. 2010).

Until now, we have had no occasion to weigh in on this issue.  Today we too reject the Seventh Circuit's view, holding

12

instead that "a 'public disclosure' requires that there be some act of disclosure <u>outside of the government</u>." <u>Rost</u>, 507 F.3d at 728 (emphasis added). As the Tenth Circuit has explained, a "public disclosure" must somehow reach the public domain and "the Government is not the equivalent of the public domain." <u>Kennard</u>, 363 F.3d at 1043. To hold otherwise would wrongfully "equate[] the government with the public," rendering "superfluous" the public disclosure bar's namesake phrase. <u>Rost</u>, 507 F.3d at 729. For "[b]y its express terms, the public disclosure bar only applies when allegations or transactions have been made public through [certain] channels [and] . . . [t]he government's own, internal awareness of the information is not one such channel." <u>Oliver</u>, 763 F.3d at 42. As we have noted in the past, "the FCA's public disclosure bar is far from a model of careful draftsmanship." <u>Graham Cnty.</u>, 528 F.3d at 305. But it seems clear that by "public disclosure," Congress did not somehow mean "disclosure to the government."

Moreover, "[t]he history of the FCA strongly bolsters this conclusion." <u>Oliver</u>, 763 F.3d at 42. When Congress enacted the statute during the Civil War, "the FCA placed no restriction on the sources from which a <u>qui tam</u> relator could acquire information on which to base a lawsuit." <u>Schindler Elevator Corp. v. United States ex rel. Kirk</u>, 131 S. Ct. 1885, 1893 (2011). To combat the growing problem of "parasitic" suits,

13

Congress amended the statute to bar "qui tam actions based on evidence of information in the possession of the United States . . . at the time such suit was brought." Id. at 1894 (internal quotation marks and citation omitted). But "in 1986, Congress replaced th[is] so-called Government knowledge bar with the narrower public disclosure bar" that governs this appeal. Id. (citation omitted). Holding, as the district court did, that the government's awareness of potential fraud triggers the public disclosure bar "would essentially reinstate a jurisdictional bar Congress expressly eliminated." Oliver, 763 F.3d at 42. This we decline to do.

In short, while both the Audit Report and the USDA Report were disclosed to government officials charged with policing the type of fraud Wilson alleges, nothing in the record suggests that either report actually reached the public domain. Thus, the public disclosure bar was not triggered on this basis.

B.

That the reports were disclosed to state and local government agencies as well as federal agencies does not alter our conclusion. Graham County directed compilation of the Audit Report and shared it with other local, state, and federal entities involved in, or overseeing, the cooperative EWP Program. The USDA prepared its report and similarly shared it with state agencies with enforcement responsibilities. In

14

neither instance did the relevant information move beyond a limited sphere of government actors interacting as part of a cooperative local-state-federal program.

Moreover, each report made clear on its face that it was intended for official use only.  See J.A.[3] 380 (Audit Report) ("This report is intended solely for your information and should not be used by those who did not participate in determining the procedures."); J.A. 264 (USDA Report) ("This document is FOR OFFICIAL USE ONLY.  It and its contents are not to be distributed outside your agency, nor duplicated, without prior clearance from the Office of Inspector General, USDA.").

The mere fact that local, state, and federal agencies share official information in the course of a cooperative endeavor cannot, without more, trigger the public disclosure bar.  As the Supreme Court explained at an earlier juncture in this very case:

> Just how accessible to the Attorney General a typical state or local source will be, as compared to a federal source, is an open question. And it is not even the right question.  The statutory touchstone, once again, is whether the allegations of fraud have been "public[ly] disclos[ed]," § 3730(e)(4)(A), not whether they have landed on the desk of a DOJ lawyer.

Graham Cnty., 559 U.S. at 299-300; see also United States ex rel. Maxwell v. Kerr-McGee Oil & Gas Corp., 540 F.3d 1180, 1184

---

[3] Citations to J.A. refer to the joint appendix filed by the parties in this appeal.

15

(10th Cir. 2008) (finding certain information transferred between federal and state government not publicly disclosed "insofar as the communication does not release the information into the public domain such that it is accessible to the general population"). Cooperation -- and thus the flow of information -- between federal, state, and local agencies is a common and critical feature of our system of federalism. We simply cannot conclude that such information has been made <u>public</u> without contorting the plain meaning of that word.[4]

### C.

The existence of public information laws also erects no obstacle to our holding. On appeal, perhaps recognizing the weight of authority contrary to the district court's holding, Appellees pivot slightly from that court's rationale. They argue that the Audit Report entered the public domain because it would have been "available" to the public via a public records

---

[4] We note that the Tenth Circuit has held that a sharing of information by state and federal agencies constitutes a "public disclosure" unless the recipient is subject to a duty of confidentiality. <u>United States ex rel. Fine v. MK-Ferguson Co.</u>, 99 F.3d 1538, 1545 (10th Cir. 1996). <u>But see</u> <u>id.</u> at 1550-51 (Henry, J., dissenting) (opining that "public disclosure" should hinge upon whether "the state . . . took positive steps to release [the information] to the public," not on whether it "has the [information] in a file cabinet somewhere subject to public disclosure"); <u>see also</u> section III.C, <u>infra</u>. We prefer to leave the focus where the statute's plain language indicates it should lie: on whether there has been an actual disclosure beyond the government to the public.

request. Appellees contend that the Audit Report was publicly disclosed because "members of the public could request and receive the audit," both "[u]nder the North Carolina Public Records Act" and through "a federal clearinghouse." Appellees' Br. 10-11. The argument is meritless. Appellees fail to distinguish between information theoretically or potentially available -- upon request -- and information "'affirmatively provided to others not previously informed thereof.'" Graham Cnty., 399 F. App'x at 776 (quoting United States ex rel. Ramseyer v. Century Healthcare Corp., 90 F.3d 1514, 1521 (10th Cir. 1996)). It is the latter that is the talisman of the public disclosure bar.

To equate eligibility for disclosure with disclosure itself does more than merely place the cart before the horse; it places the cart before a horse that may never follow. As one of our sister circuits has noted, a state agency that has "simply placed [a] report in its investigative file and restricted access to those persons clairvoyant enough to specifically ask for it" has not publicly disclosed that report within the meaning of the FCA. Ramseyer, 90 F.3d at 1521; accord Meyer, 565 F.3d at 1200-01 ("[A] public disclosure is restricted to information that is actually made public as opposed to material that is only theoretically available upon the public's request." (internal quotation marks and citation omitted)).

17

At oral argument, Appellees attempted to return both cart and horse to their logical positions, suggesting that Wilson actually received a copy of the Audit Report through the state's Public Records Act. But the district court made no such finding, probably because nothing in the record lends support for such a finding. The cover letter that accompanied the Audit Report indicates that of the four copies sent to Graham County, one was earmarked specifically for the Graham County SWCD, where Wilson worked. And in deposition, Wilson admitted to receiving a copy of the Audit Report "[a]s soon as it was available . . . [b]ut I think I requested that from Graham County."

Wilson's recollection comports not only with the cover letter's instructions, but also with common sense. As a secretary at the Graham County SWCD, Wilson spoke with and provided files to the auditor performing the review. Thus, she would have been aware of the forthcoming Audit Report. Nothing indicates that she obtained a copy through a cumbersome Public Records Act request rather than by simply asking for one. Far from defeating jurisdiction, then, Wilson's receipt of the Audit Report confirms that she is precisely the sort of "whistle-blowing insider[]" the statute seeks to encourage. Graham

18

<u>Cnty.</u>, 559 U.S. at 294 (internal quotation marks and citation omitted).[5]

IV.

Satisfied that nothing triggered the public disclosure bar in this case, we hold that the district court had jurisdiction over this action.  We emphasize that our holding addresses only the limited issue of subject-matter jurisdiction.  Whether Wilson's complaint sufficiently alleges actionable fraud against the government is an issue not before us today and one on which we do not opine.  For the sole reason that no public disclosure deprived it of jurisdiction, the judgment of the district court is

<u>REVERSED</u>.

---

[5] Appellees, like the district court, fleetingly suggest a third potential public disclosure:  the 1998 federal indictment of USDA employee Richard Greene.  The record offers no support for this conclusion.  In fact, two years <u>before</u> the indictment was filed, Wilson provided substantially all the information in it to Special Agent Golec.  <u>Compare</u> J.A. 247 <u>with</u> Bill of Indictment (Dec. 8, 1998), ECF No. 261-1.  Thus, Wilson could not have based her claims on the Indictment.

19